IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TREY HARDY | ) | CASE NO. |
| 996 Wilson Avenue | ) | |
| Columbus, Ohio 43206, | ) | JUDGE: |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT FOR DAMAGES** |
| | ) | **AND REINSTATEMENT** |
| THE LANG STONE COMPANY, | ) | |
| INCORPORATED | ) | **JURY DEMAND ENDORSED** |
| 4099 East 5th Avenue | ) | **HEREIN** |
| Columbus, Ohio 43219 | ) | |
| | ) | |
| **Serve Also:** | ) | |
| The Lang Stone Company, | ) | |
| Incorporated | ) | |
| c/o KBHR Statutory Agent Corp | ) | |
| P.O. Box 361715 | ) | |
| Columbus, Ohio 43236 | ) | |
| | ) | |
| -and- | ) | |
| | ) | |
| MAGGIE STELLING | ) | |
| c/o The Lang Stone Company | ) | |
| 4099 East 5th Avenue | ) | |
| Columbus, Ohio 43219 | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff, Trey Hardy, by and through undersigned counsel, states and avers the following for the Complaint against the Defendants:

### PARTIES AND VENUE

1. Hardy is a resident of the City of Columbus, County of Franklin, State of Ohio.

2. At all times herein, Hardy was acting in the course and scope of his employment.

3. The Lang Stone Company, Incorporated ("Lang") is a domestic corporation with its principal place of business located at 4099 East 5th Avenue, Columbus, Ohio 43219.



4. Lang is and, at all times herein, was an employer within the meaning of R.C. § 4112.01 *et seq.*

5. Maggie Stelling is a resident of Ohio.

6. At all times herein, Stelling was acting in the course and scope of her employment.

7. Stelling was, at all times hereinafter mentioned, an individual who was a manager and/or supervisor at Lang who acted directly or indirectly in the interest of Lang.

8. Stelling was at all times hereinafter mentioned an employer within the meaning of R.C. § 4112.02.

9. All of the material events alleged in this Complaint occurred in Franklin County, Ohio.

10. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Hardy is alleging a Federal Law Claim under The Americans with Disabilities Act ("ADA") 42 U.S.C. § 12101 *et seq.* and The Family & Medical Leave Act ("FMLA"), 29 U.S.C § 2601, *et seq.*

11. This Court has supplemental jurisdiction over Hardy's state law claims pursuant to 28 U.S.C. § 1367 as Hardy's state law claims are so closely related to his federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

12. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

13. Within 300 days of the conduct alleged below, Hardy filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 532-2023-02068 against Lang and Stelling ("Hardy EEOC Charge").

14. Hardy dually filed the Hardy EEOC Charge with the EEOC and the Ohio Civil Rights Commission.

15. On or about August 29, 2023, the EEOC issued a Notice of Right to Sue letter to Hardy regarding the Hardy EEOC Charge.



16. Hardy received his Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1), which has been attached hereto as Plaintiff's Exhibit A.

17. Hardy has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

18. Hardy has properly exhausted his administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

19. Hardy has properly exhausted his administrative remedies pursuant to R.C. § 4112.052.

## FACTS

20. Hardy is a former employee of Lang.

21. Hardy was hired by Lang on or about October 1, 2001.

22. Hardy was employed by Lang in the position of Fabricator.

23. Lang was, at all times hereinafter mentioned, engaged in commerce or in an industry or activity affecting commerce and employed 50 or more employees for each working day during each of 20 or more calendar work weeks in the current or preceding calendar year and therefore is an employer as defined in 29 U.S.C § 2611(4).

24. At all times relevant herein, Hardy was employed by Lang for at least 12 months and had at least 1,250 hours of service with Lang and therefore was an "eligible employee" under FMLA, as that term is defined in 29 U.S.C. § 2611(2)(A).

25. Hardy suffers from depression and alcohol addiction ("Hardy's Disabilities").

26. Hardy's Disabilities are mental or psychological disorders, and specifically intellectual disabilities.

27. Hardy's Disabilities are diseases.

28. Hardy's Disabilities relate to an intellectual disability.



29. Hardy's Disabilities are physical impairments.

30. Hardy's Disabilities substantially limit one or more major life activities.

31. Hardy has a record of Hardy's Disabilities.

32. As a result of Hardy's Disabilities, Hardy is and was considered disabled within the meaning of the ADA.

33. As a result of Hardy's Disabilities, Hardy is and was considered disabled within the meaning of R.C. § 4112.01(A)(13).

34. Hardy disclosed Hardy's Disabilities to Defendants.

35. In the alternative, Defendants perceived Hardy as being disabled.

36. In the alternative, the Defendants perceived that Hardy's Disabilities constituted mental impairments.

37. In the alternative, Defendants perceived Hardy's Disabilities to substantially impair one or more major life activities, including working.

38. Despite this actual or perceived disabling condition, Hardy was still able to perform the essential functions of Hardy's job.

39. On or about October 31, 2022, Hardy's Disabilities had become so severe that they required Hardy to seek immediate medical treatment.

40. On or about October 31, 2022, Hardy's Disabilities had become so severe that they required Hardy to admit himself to an inpatient medical facility for immediate treatment.

41. On or about October 31, 2022, Hardy's Disabilities had become so severe that they required Hardy to admit himself to an inpatient medical facility for continuing treatment.

42. Paragraphs 39 to 41 will be referred to collectively as Hardy's "Serious Health Condition."



43. As a result of Hardy's Serious Health Condition, Hardy was admitted to The Recovery Village where he received continuing treatment from October 31, 2022, to December 23, 2022.

44. As a result of Hardy's Serious Health Condition, Hardy was admitted to The Recovery Village where he remained incapacitated from October 31, 2022, to December 23, 2022 ("Period of Incapacity").

45. During the Period of Incapacity, Hardy could not communicate directly with Lang.

46. During the Period of Incapacity, Hardy could not leave The Recovery Village facility.

47. During the Period of Incapacity, Hardy could not work.

48. During the Period of Incapacity, Hardy relied on employees of The Recovery Village to communicate with Lang on his behalf.

49. During the Period of Incapacity, Hardy relied on employees of The Recovery Village to inquire about Hardy's FMLA eligibility.

50. During the Period of Incapacity, Hardy relied on employees of The Recovery Village to inquire about Hardy's FMLA rights.

51. During the Period of Incapacity, Hardy relied on employees of The Recovery Village to invoke Hardy's FMLA rights.

52. On or about November 2, 2022, a Recovery Village employee attempted to contact Lang regarding Hardy's Serious Health Condition.

53. On or about November 2, 2022, a Recovery Village employee attempted to contact Lang regarding Hard's FMLA eligibility.

54. On or about November 2, 2022, a Recovery Village employee attempted to contact Lang regarding Hard's FMLA rights.



55. On or about November 2, 2022, Lang failed to answer the phone call from Recovery Village attempting to notify Lang of Hardy's Serious Health Condition.

56. On or about November 2, 2022, a Recovery Village employee left a voicemail with Lang notifying Lang of Hardy's Serious Health Condition.

57. Paragraphs 52 to 57 will be referred to collectively as the "First Notification of Hardy's Serious Health Condition."

58. As a result of the First Notification of Hardy's Serious Health Condition, Lang was aware that Hardy was admitted to The Recovery Village for medical treatment.

59. As a result of the First Notification of Hardy's Serious Health Condition, Lang was aware that Hardy had a serious health condition.

60. As a result of the First Notification of Hardy's Serious Health Condition, Lang was obligated to make Hardy aware of his FMLA rights.

61. Following the First Notification of Hardy's Serious Health Condition, Lang failed to make Hardy aware of his FMLA rights.

62. Following the First Notification of Hardy's Serious Health Condition, Lang failed to respond to the First Notification of Hardy's Serious Health Condition in any way.

63. On or about November 2, 2022, Hardy qualified for FMLA leave in connection with his own serious health condition.

64. On or about November 2, 2022, Hardy was eligible to utilize FMLA leave due to his own serious health condition.

65. On or about November 2, 2022, Hardy was entitled to utilize FMLA leave due to his own serious health condition.



66. On or about November 9, 2022, Recovery Village contacted Lang again regarding Hardy's Serious Health Condition ("Second Notification of Hardy's Serious Health Condition").

67. During the Second Notification of Hardy's Serious Health Condition, Lang informed Recovery Village that Maggie Stelling would follow up with Recovery Village regarding Hardy's FMLA eligibility.

68. Stelling was Hardy's supervisor.

69. Stelling was a Human Resources Manager for Lang.

70. Stelling was responsible for processing FMLA requests submitted by Lang employees.

71. As a result of the Second Notification of Hardy's Serious Health Condition, Lang was aware that Hardy was admitted to The Recovery Village for medical treatment.

72. As a result of the Second Notification of Hardy's Serious Health Condition, Lang was aware that Hardy had a serious health condition.

73. As a result of the Second Notification of Hardy's Serious Health Condition, Lang was obligated to make Hardy aware of his FMLA rights.

74. Following the Second Notification of Hardy's Serious Health Condition, Lang failed to make Hardy aware of his FMLA rights.

75. On or about November 9, 2022, following the Second Notification of Hardy's Serious Health Condition, Stelling sent Recovery Village a message via electronic mail entitled "FMLA Certification" ("FMLA Email").

76. In the FMLA Email, Stelling attached a document from the United States Department of Labor indicating that an FMLA-qualified employer "may require an employee seeking FMLA protections…to submit a medical certification issued by the employee's health care provider."



7

77. The FMLA Email did not indicate whether Lang was requiring Hardy to submit such medical certification.

78. The FMLA Email did not include any information regarding Hardy's FMLA eligibility.

79. The FMLA Email did not include any information regarding Hardy's FMLA rights.

80. The FMLA Email was the only communication Lang sent to Recovery Village regarding Hardy.

81. Lang failed to inform Hardy of his FMLA rights.

82. In failing to notify Hardy of his FMLA rights, Lang interfered with Hardy's FMLA rights.

83. On or about December 23, 2022, Hardy was released from Recovery Village.

84. From December 23, 2022, to January 3, 2023, Hardy could not return to work because Lang was closed for the Christmas and New Year's holidays.

85. On or about January 3, 2023, when Hardy returned to work, Stelling informed Hardy that Lang had terminated Hardy's employment ("Termination").

86. Defendants' stated basis for termination was that Hardy had allegedly failed to submit an FMLA request within 15 days of his initial absence on October 31, 2022 ("Stated Basis for Termination").

87. Defendants have a progressive disciplinary policy.

88. Defendants used a progressive disciplinary policy.

89. Defendants used a progressive disciplinary policy for employees who are not disabled.

90. Defendants used a progressive disciplinary policy for employees who did not request FMLA leave during their employment.

91. Defendants used a progressive disciplinary policy for employees who did not utilize FMLA leave during their employment.

8



92. Under the progressive disciplinary policy, Hardy had not been given a verbal warning related to the Stated Basis for Termination.

93. Under the progressive disciplinary policy, Hardy had not been given a written warning related to the Stated Basis for Termination.

94. Under the progressive disciplinary policy, Hardy had not been given a final written warning related to the Stated Basis for Termination.

95. Under the progressive disciplinary policy, Hardy had not been given a suspension related to the Stated Basis for Termination.

96. Prior to terminating Hardy's employment, Defendants never issued any written communication criticizing Hardy for any reason related to the Stated Basis for Termination.

97. The Stated Basis for Termination has no basis in fact.

98. The Stated Basis for Termination did not actually motivate Defendants' decision to terminate Hardy's employment.

99. The Stated Basis for Termination was insufficient to motivate the termination of Hardy's employment.

100. The Stated Basis for Termination was pretext to terminate Hardy's employment.

101. Defendants did not terminate similarly situated employees for a reason like the Stated Basis for Termination.

102. Defendants' termination of Hardy's employment was retaliation for Hardy utilizing FMLA leave.

103. Defendants terminated Hardy's employment because of Hardy's disability.

104. By terminating Hardy's employment, Defendants interfered with Hardy's FMLA rights.

105. By terminating Hardy's employment, Defendants violated the FMLA.



106. The Termination constitutes retaliation.

107. The Termination constitutes disability discrimination.

108. Defendants knowingly skipped progressive disciplinary steps in terminating Hardy's employment.

109. Defendants knowingly terminated Hardy's employment.

110. Defendants knowingly took an adverse employment actions against Hardy.

111. Defendants knowingly took an adverse actions against Hardy.

112. Defendants intentionally skipped progressive disciplinary steps in terminating Hardy's employment.

113. Defendants intentionally terminated Hardy's employment.

114. Defendants intentionally took an adverse employment actions against Hardy.

115. Defendants intentionally took an adverse actions against Hardy.

116. Defendants knew that skipping progressive disciplinary steps in terminating Hardy's employment would cause Hardy harm, including economic harm.

117. Defendants knew that terminating Hardy's employment would cause Hardy harm, including economic harm.

118. Defendants willfully skipped progressive disciplinary steps in terminating Hardy's employment.

119. Defendants willfully terminated Hardy's employment.

120. There was a causal connection between Hardy's disability and the Termination.

121. There was a causal connection between Hardy's utilization of FMLA leave and the Termination.



122. As a result of Defendants' unlawful acts, Hardy has suffered, and will continue to suffer, pecuniary harm.

123. As a result of Defendants' unlawful acts, Hardy has suffered, and will continue to suffer, emotional distress.

**COUNT I: DISABILITY DISCRIMINATION IN VIOLATION OF THE ADA**

124. Hardy restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

125. Defendants took adverse employment actions against Hardy based on Hardy's actual or perceived disability.

126. Defendants violated the ADA when they took adverse employment actions against Hardy based on Hardy's actual or perceived disability.

127. Defendants violated the ADA when they engaged in disparate treatment based on Hardy's actual or perceived disability.

128. Hardy suffered damages as a proximate result of Defendants' conduct based on Hardy's actual or perceived disability.

129. As a direct and proximate result of Defendants' disability-based conduct, Hardy has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

130. In discriminating against Hardy based on disability, Defendants acted with malice or reckless indifference to the rights of Hardy, thereby entitling Hardy to an award of punitive damages.

**COUNT II: DISABILITY DISCRIMINATION IN VIOLATION OF R.C. 4112.01 *et seq.***

131. Hardy restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

11



132. Defendants took adverse employment actions against Hardy based on Hardy's actual or perceived disability.

133. Defendants violated R.C. § 4112.02(A) when they took adverse employment actions against Hardy based on Hardy's actual or perceived disability.

134. Defendants violated R.C. § 4112.02(A) when they engaged in disparate treatment based on Hardy's actual or perceived disability.

135. Hardy suffered damages as a proximate result of Defendants' conduct based on Hardy's actual or perceived disability.

136. As a direct and proximate result of Defendants' disability-based conduct, Hardy has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

137. In discriminating against Hardy based on disability, Defendants acted with malice or reckless indifference to the rights of Hardy, thereby entitling Hardy to an award of punitive damages.

## COUNT III: UNLAWFUL INTERFERENCE WITH FMLA RIGHTS

138. Hardy restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

139. Pursuant to 29 U.S.C. § 2601 et seq., covered employers are required to provide employees job-protected unpaid leave for qualified medical and family situations.

140. Lang is a covered employer under FMLA.

141. During his employment, Hardy qualified for FMLA leave.

142. During his employment, Hardy attempted to request FMLA leave by asking Defendants if he qualified to take FMLA leave.

143. Defendants failed to properly advise Hardy of his rights under FMLA.



144. Defendants unlawfully interfered with Hardy's exercise of his rights under FMLA in violation of Section 105 of FMLA and section 825.220 of FMLA regulations.

145. Defendants' termination of Hardy's employment during his FMLA leave violated and interfered with Hardy's FMLA rights.

146. Defendants violated section 825.300(c)(1) of FMLA and interfered with Hardy's FMLA rights when Defendants did not honor Hardy's approved use of FMLA leave.

147. As a direct and proximate result of Defendants' conduct, Hardy is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs, and reasonable attorney's fees.

### COUNT IV: RETALIATION IN VIOLATION OF FMLA

148. Hardy restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

149. During his employment, Hardy utilized FMLA leave.

150. After Hardy utilized his qualified FMLA leave, Defendants retaliated against him.

151. Defendants retaliated against Hardy by terminating his employment.

152. Defendants willfully retaliated against Hardy in violation of 29 U.S.C. § 2615(a).

153. As a direct and proximate result of Defendants' wrongful conduct, Hardy is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs, and reasonable attorney's fees.

### COUNT V: UNLAWFUL AIDING, ABETTING, AND INCITING OF DISCRIMINATION
### (Against Stelling)

154. Hardy restates each and every prior paragraph of this Complaint, as if it were fully restated herein.



155. Pursuant to R.C. § 4112.02(J), it is unlawful "[f]or any person to aid, abet, incite, compel, or coerce the doing of any act declared by this section to be an unlawful discriminatory practice..."

156. Stelling aided, abetted, incited, coerced, and/or compelled Lang's discriminatory adverse employment actions against Hardy.

157. Stelling aided, abetted, incited, coerced, and/or compelled Lang's discriminatory treatment of Hardy.

158. Stelling violated R.C. § 4112.02(J) by aiding, abetting and inciting discrimination.

159. Hardy suffered emotional distress as a result of Stelling conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 et seq.

160. As a direct and proximate result of Stelling's conduct, Hardy has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

161. In aiding, abetting and inciting discrimination against Hardy based on disability, Defendants acted with malice or reckless indifference to the rights of Hardy, thereby entitling Hardy to an award of punitive damages.

## DEMAND FOR RELIEF

WHEREFORE, Trey Hardy demands from Defendants the following:

(a) Issue a permanent injunction:

    (i) Requiring Lang to abolish discrimination, harassment, and retaliation;

    (ii) Requiring allocation of significant funding and trained staff to implement all changes within two years;

    (iii) Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to promptly



investigate complaints and/or take effective action to stop and deter prohibited personnel practices against employees;

 (iv) Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

 (v) Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

(b) Issue an order requiring Lang to restore Hardy to one of the positions to which Hardy was entitled by virtue of Hardy's application and qualifications, and expunge Hardy's personnel file of all negative documentation;

(c) An award against each Defendant of compensatory and monetary damages to compensate Hardy for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(d) An award of punitive damages against each Defendant in an amount in excess of $25,000;

(e) An award of reasonable attorneys' fees and non-taxable costs for Hardy claims as allowable under law;

(f) An award of the taxable costs of this action; and

(g) An award of such other relief as this Court may deem necessary and proper.



Respectfully submitted,

*/s/ Trisha Breedlove*
Trisha Breedlove (0095852)
**THE SPITZ LAW FIRM, LLC**
1103 Schrock Road, Suite 307
Columbus, Ohio 43229
Phone: (614) 683-7331
Fax: (216) 291-5744
Email: trisha.breedlove@spitzlawfirm.com

*Attorney For Plaintiff Trey Hardy*

## JURY DEMAND

Plaintiff Trey Hardy demands a trial by jury by the maximum number of jurors permitted.

*/s/ Trisha Breedlove*
Trisha Breedlove (0095852)

